## Pacific Coal Mining Company v. Horn.

(Decided November 24, 1925.)

### Appeal from Muhlenberg Circuit Court.

1. Master and Servant—Whether Mule Causing Injury Came in Contact with Electric Wire Held for Jury.—In action for injury from collision of mule with coal car containing employe, testimony by employe that mule got into electric wire with current on, and of other witnesses that mule was knocked down simultaneously with turning on of current, authorized submission to jury of question whether mule came in contact with electric wire.

2. Master and Servant—Employer Transporting Laborers Near Power Line Under Duty to Ascertain their Arrival Before Turning on Electric Current.—Employer, in assuming to transport laborers in close proximity to dangerous electric power lines, owes laborers duty of ascertaining their arrival before subjecting them to danger by turning on current.

3. Master and Servant—Whether Collision Caused Injury Held Question for Jury.—In action for injury from collision of mule with coal car containing employe, where employer claims that employe's injury was caused by previous fall, testimony by employe that he was unhurt by previous fall was sufficient to submit question of proximate cause of injury to jury.

4. Trial—Verdict for Plaintiff Held Not to be Flagrantly Against Evidence.—In employe's action for negligent injury resulting from collision of mule with car containing employe, where there is some evidence on each of disputed questions, a verdict for employe can not be said to be flagrantly against the evidence as being result of passion or prejudice.

EAVES & SANDIDGE for appellant.

WILLIS & TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Eura Horn, a coal loader employed by the Pacific Coal Mining Company, sued that company for personal injuries alleged to have been received in a "head-on" collision, while riding to his work in a coal car of the company; he recovered judgment for $2,500.00 and the company appeals.

The lie-way of the mine for a distance of 1,500 feet is equipped with electrical power lines, over which power is transmitted for the removal of coal to the mouth of the mine; cars drawn by mules being used to move the coal from the rooms to the lie-way. The electric wires

were attached to the roof of the lie-way, but it appears that they are not insulated and their height above the floor is not shown. The evidence for plaintiff indicates that the power is turned on at 7:30 a. m. and turned off at 3:30 p. m. It is the custom in that mine for the coal loaders to ride to their work in the morning from the mouth of the mine to their rooms, in the company's coal cars drawn by mules and to begin their work before the current is turned on. The cars are so arranged that the occupants face each other with their backs to the sides of the car.

On the morning of November 2, 1923, two cars carrying eight laborers each were thus transported; plaintiff riding in the front of the rear car on the right side. He testifies that the workman to his left was carrying a pick, the bit of which was on the floor with the handle between them, and there was a carbide can in the pocket of his coat which was on the seat behind him. Just as the front car passed the end of the line the electric current was turned on. The mule drawing the second car "got into the wire and was knocked down, raised to its feet, fell again, arose the second time and run away." The driver released the mule from the car and tried to stop it, but it was running down grade and continued until it collided with the other car. Both he and the laborer next to him were thrown forward, pressing the pick into his side near the hip, and he was also pressed violently against the carbide can. After the car stopped he got out; his back and hip hurt him and he stayed at the place for several minutes, but later he and his brother went to their work. He was unable to do any work but stayed at the mine until about two p. m. The next day he attempted to work but was unable to do so. Saturday the mine did not open. During that time he was suffering severely and bathed his back and hip with liniment but did not call a doctor, and rode his mule back and forth from the mine to his home a distance of four miles. On Monday he called in a physician. His trouble grew worse and he took to his bed, where he was confined under the treatment of a physician for six or eight weeks, and later has been under the treatment of the same physician at his office. Subsequently an X-ray photograph was taken by the physician. His statements as to his physical condition are corroborated by several witnesses, including his physician, who also testifies as to a dislocation of the

vertebra being shown by the X-ray photograph, and states that in his opinion the injuries are permanent.

No other witness present testifies that the mule came in contact with the electric wire, though several, including defendant's driver, testify as to its falling twice, upon the current being turned on and running away when it got to its feet, and gave it as their conclusion that it must have touched the wire with its ear. Also no one else was injured by the collision except one laborer whose wrist was sprained but not so seriously as to interfere with his labors, and there is testimony that the impact was not of sufficient violence to overturn the dinner buckets which were carried on the floor of the car.

This collision occurred on Thursday, and it is further shown in evidence that plaintiff was thrown from a mule on the Saturday previous, some of the witnesses for the defense testifying that he received a hard fall on his back, while others testified that the saddle was ungirthed and that he merely slipped over the mule's head on his hands and knees, it being agreed that he got up immediately and rode his mule home, and he testifying that he received no bad effects therefrom.

On this evidence it is earnestly urged (1) that a peremptory instruction should have been given for the defendant for the reasons that it is not shown that the mule drawing the car at the time of the collision came in contact with the electric wire. (2) That according to plaintiff's evidence the electric current was turned on at 7:30 in the morning and that it was plaintiff's duty to be at work at that time, and it is not shown that it was turned on earlier in the morning of the alleged injury. (3) It is as likely that plaintiff's injuries were caused by the fall from the mule as it is that they were the result of the collision of cars; and, therefore, it cannot be said with any degree of certainty that they were the proximate result of such collision.

While not entirely free from doubt we are unable to adopt either of these contentions. First: Plaintiff himself testifies that the mule "got into the wire," which is positive evidence of contact. No other witness claims to have seen the mule touch the wire, but a number testify that simultaneously with the turning on of the current the mule was knocked down or fell down twice, and this evidence authorized a submission of that issue to the

jury. (2) The appellant introduced no evidence as to the character of installation, or the manner of operation of its electric equipment, or the hour at which the current was turned on that day, or its usual custom in that respect, or that the laborers were not properly riding on the car, which it is testified they were riding according to custom. This is not a case of individual laborers going back and forth in the lie-way during working hours. Here the car was being driven by its regular driver. Sixteen men were in transit. In thus assuming to transport its laborers in close proximity to a dangerous electric power line it owed them the duty of ascertaining their arrival before subjecting them to such danger. (3) The defendant testified positively that he was unhurt by the accident on Saturday, but, on the contrary, was as strong and well as ever and continued to work until the day of the collision without suffering any discomfort. This evidence authorized a submission of the issue of proximate cause to the jury, and the court did this in a separate instruction. It is also urged that the verdict is flagrantly against the evidence. It may be conceded that the case is a close one and not free from doubt, but there is some evidence on each of the disputed questions and it cannot be said that the verdict is so flagrantly against the evidence as being the result of passion or prejudice.

Wherefore, perceiving no error, the judgment is affirmed.